UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KATRINA ANN PERYEA,

                              Plaintiff,

v.                                                      5:13-CV-00173
                                                        (GTS/TWD)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                              OF COUNSEL:


OLINSKY LAW GROUP                         HOWARD D. OLINSKY, ESQ.
*Counsel for Plaintiff*
One Park Place
300 South State Street, Suite 420
Syracuse, New York 13202


HON. RICHARD S. HARTUNIAN                 JOANNE JACKSON
United States Attorney for the            Special Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL                 STEPHEN P. CONTE, ESQ.
Social Security Administration            Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to the undersigned for report and recommendation by the

Honorable Glenn T. Suddaby, United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Northern District of New York Local Rule 72.3.  This case has proceeded in accordance with

General Order 18 of this Court which sets forth the procedures to be followed when appealing a

denial of Social Security benefits.  Both parties have filed briefs.  Oral argument was not heard.

For the reasons discussed below, it is recommended that the decision of the Commissioner be

affirmed.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is thirty-nine years old.  (T. at 334.)[1]  Plaintiff was part of a special education

program throughout elementary and high school and received a IEP Diploma.  (T. at 335-36.)

Beginning in 1997, Plaintiff worked for a hospital call center until 2002, utilizing the help of a job

coach for the first two of her five years there.  (T. at 339.)  In 2002, Plaintiff was dismissed from

that position for missed work due to illness.  (T. at 340.)  Plaintiff later worked briefly as a

babysitter, but she quit doing so for reasons unrelated to her alleged limitations.  (T. at 346-47.)

Plaintiff alleges disability due to mild mental retardation, borderline diabetes, hyperthyroidism,

hyperlipidism, obesity, and an ankle injury.[2]  (T. at 333.)

Plaintiff applied for disability insurance benefits and SSI on May 18, 2010.  (T. at 21.)

The application was denied on July 30, 2010.  *Id.*  Plaintiff requested a hearing before an

Administrative Law Judge ("ALJ").  *Id.*  The hearing was initiated on May 17, 2011, but Plaintiff

---

[1]    All citations to the record on appeal refer to the transcript.  (Dkt. No. 9.)

[2]    The ALJ found that only Plaintiff's mild mental retardation qualified as a "severe impairment."  (T. at 23-24.)  Plaintiff's argument points to error in (1) the ALJ's consideration of psychiatric evidence; (2) the ALJ's failure to hear evidence from a vocational expert for Plaintiff's mental limitations; and (3) the ALJ's credibility determinations.  (Dkt. No. 11.)  At no point in these arguments does Plaintiff dispute the finding of the ALJ that only the mental limitation is at issue.  Therefore, this Court does not review that finding.

was granted a continuance to obtain counsel. (T. at 309, 316.) A second continuance was granted for the same purpose on November 3, 2011. (T. at 321.) After the second continuance, the ALJ ordered a consultative psychiatric examination, which was conducted by Dr. Noia before the final hearing. (T. at 209.) The final hearing occurred on March 15, 2012. (T. at 21.) After this hearing, but before the record was closed, a second consultative examination was ordered in error, and performed by Dr. Caldwell. (T. at 155.) On June 8, 2012, the ALJ made a finding of not disabled. (T. at 29.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on November 9, 2012. (Dkt. No. 1.) Plaintiff commenced this action on February 14, 2013. *Id*.

## II.    APPLICABLE LAW

### A.    Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2014). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a) (2014)), the

Social Security Administration ("SSA") promulgated regulations establishing a five-step

sequential evaluation process to determine disability.  20 C.F.R. § 416.920 (2014).  "If at any step

a finding of disability or non-disability can be made, the SSA will not review the claim further."

*Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find nondisability unless the claimant
> shows that he is not working at a "substantial gainful activity."  [20
> C.F.R.] §§ 404.1520(b), 416.920(b).  At step two, the SSA will find
> nondisability unless the claimant shows that he has a "severe
> impairment," defined as "any impairment or combination of
> impairments which significantly limits the claimant's physical or
> mental ability to do basic work activities."  [20 C.F.R.] §§
> 404.1520(c), 416.920(c).  At step three, the agency determines whether
> the impairment which enabled the claimant to survive step two is on
> the list of impairments presumed severe enough to render one
> disabled; if so, the claimant qualifies.  [20 C.F.R.] §§ 404.1520(d),
> 416.920(d).  If the claimant's impairment is not on the list, the inquiry
> proceeds to step four, at which the SSA assesses whether the claimant
> can do his previous work; unless he shows that he cannot, he is
> determined not to be disabled.  If the claimant survives the fourth
> stage, the fifth, and final, step requires the SSA to consider so-called
> "vocational factors" (the claimant's age, education, and past work
> experience), and to determine whether the claimant is capable of
> performing other jobs existing in significant numbers in the national
> economy.  [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f),
> 416.9630(c).

*Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps.  *Kohler v.*

*Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)).

If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-

Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working.  *Id.*

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the

correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

"Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the

record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.     THE ALJ'S DECISION

Here, the ALJ found Plaintiff not disabled at step four of the five step analysis, because she had a residual functional capacity ("RFC") sufficient to perform her past relevant work at the hospital call center as she had actually performed it. (T. at 28.)

In the ALJ's decision, he addressed three sources of medical opinion evidence with regard to Plaintiff's mental limitations: the opinions of Dr. Nobel, Dr. Noia, and Dr. Caldwell. (T. at 21-29.) During the initial review of Plaintiff's application, the SSA conducted a psychiatric review, and psychiatric consultant Dr. Nobel rendered an opinion that Plaintiff had a severe cognitive impairment, but could perform "simple work tasks." (T. at 193.) Dr. Noia's consultative examination concluded generally that Plaintiff was capable of performing simple work. (T. at 213.) Dr. Caldwell, on the other hand, concluded that Plaintiff's cognitive limitations would make it difficult for Plaintiff to do simple work. (T. at 300.)

The ALJ relied heavily on the hearing testimony to determine what weight to give to the conflicting medical sources. (T. at 23-28.) Both Plaintiff and her mother testified extensively about Plaintiff's practical capabilities and limitations. (T. at 331-72.) Both Plaintiff and her mother testified that she lost the job at the call center because surgery caused her to miss too much work, and not because of her mental limitations. (T. at 340, 370.) Plaintiff testified that if she had been given more time, she could have continued working at that job. (T. at 341.) Her mother testified that other than Plaintiff's absences, her employer had been happy with her work. (T. at 370.) Her mother also testified that Plaintiff was an able caretaker of children. (T. at 368.)

In handling conflicting consultative examinations, the ALJ adopted the opinion of Dr.

Noia and gave Dr. Caldwell's opinion less weight, finding that the latter was not consistent with

the SSA's initial psychological review findings by Dr. Noble, nor with Plaintiff's presentation

during the hearings.  (T. at 27-28.)

## IV.     THE PARTIES' CONTENTIONS

Plaintiff claims that the ALJ erred by:  (1) failing to make proper credibility findings as to

hearing testimony; (2) failing to give Dr. Caldwell's medical opinion proper weight; (3) failing to

account for Plaintiff's limitations to concentration, persistence, and pace in determining Plaintiff's

RFC; and (4) failing to seek vocational expert testimony in determining whether Plaintiff could

perform her past relevant work as a customer service representative.  (Dkt. No. 11.)  Plaintiff

seeks remand for reconsideration of these issues.  *Id*.  Defendant contends that the ALJ's decision

applied the correct legal standards and is supported by substantial evidence and thus should be

affirmed.  (Dkt. No. 18.)  For the reasons outlined below, I recommend that the decision of the

Commissioner be affirmed.

## V.      DISCUSSION

### A.      Credibility Determinations of Hearing Testimony

The Court reviews an ALJ's findings of fact under a substantial evidence standard.  "It is

the function of the Commissioner, not the reviewing courts, to resolve evidentiary conflicts and to

appraise the credibility of witnesses, including the claimant."  *Aponte v. Sec'y, Dept. of Health &*

*Human Servs*., 728 F.2d 588, 591 (2d Cir. 1984) (citation omitted).  In making a credibility

determination, the hearing officer is required to take the claimant's reports of pain and other

limitations into account.  20 C.F.R. § 416.929 (2014).  To satisfy the substantial evidence rule, the

ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record.  20 C.F.R. § 404.1529 (2014); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010); SSR 96-7p, 1996 WL 374186, at *5 (S.S.A. July 2, 1996)[3].  The ALJ is required to consider all of the evidence of record in making his credibility assessment.  *Genier,* 606 F.3d at 50 (citing 20 C.F.R. §§ 404.1529, 404.1545(a)(3) (2014)).

First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms.  SSR 96-7p.  This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms.  *Id*.  If no impairment is found that could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities.  An individual's statements about his pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled.  *Id.*

Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence.  *Genier,* 606 F.3d at 49; *see also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (finding that claimant's subjective complaints of pain were insufficient to establish disability because they were unsupported by objective medical evidence tending to support a conclusion that he has a medically determinable impairment that could reasonably be expected to produce the alleged

---

[3]        There is no Lexis citation for this source.

symptoms); see also SSR 96-7p ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."). This includes evaluation of the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. *Genier,* 606 F.3d at 49.

The ALJ must consider all evidence of record, including statements the claimant or others make about her impairments, her restrictions, daily activities, efforts to work, or any other relevant statements the claimant makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony during administrative proceedings. *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1512(b)(3) (2014)). A claimant's symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone. SSR 96-7p. When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3).

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must

set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 U.S. Dist. LEXIS 4085, at *15, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999) (citing *Aponte*, 728 F.2d at 599; *Ferraris*, 728 F.2d at 582)). "A finding that a [claimant] is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record. *Williams*, 859 F.2d at 260-61 (citation omitted) (finding that failure to make credibility findings regarding claimant's critical testimony undermines the Secretary's argument that there is substantial evidence adequate to support his conclusion that claimant is not disabled). "Further, whatever findings the ALJ makes must be consistent with the medical and other evidence." *Id*. at 261 (citation omitted) ("[A]n ALJ must assess subjective evidence in light of objective medical facts and diagnoses.").

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." *Genier*, 606 F.3d at 49 (citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)). An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence. *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 U.S. Dist. LEXIS 6988, at *29-30, 2003 WL 470572, at *10 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999); *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 U.S. Dist. LEXIS 11595, at *19, 1998 WL 430547, at *6 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.")).

Here, Plaintiff contends that the ALJ "failed to demonstrate how Plaintiff's limited abilities to perform arithmetic and video games demonstrate her ability to work a regular and continuing basis (eight hours a day, five days a week, or equivalent)." (Dkt. No. 11 at 11.) This argument grossly understates the capabilities and limitations for which the ALJ accounted in his decision. The ALJ acknowledges that Plaintiff "has difficulty balancing a checkbook and gets some assistance from her mother in understanding letters that come in the mail and caring for her personal needs," but that she:

> is able to maintain her personal hygiene, read/write a simple note, read Harry Potter books with some difficulty with harder words, do simple addition and subtraction, use a microwave to prepare food, do laundry, help clean, use a computer, play video games, and socialize with friends and family.

(T. at 25.) He also notes that she was capable of babysitting multiple children until at least 2009. *Id*.

In any case, whether or not the ALJ applied certain facts in determining whether the Plaintiff was capable of working eight hours a day for five days a week is a question of RFC determination, not credibility. Therefore, this argument will be discussed below. In stating these limitations and capabilities in the decision, the ALJ has at least made some determination of the credibility of the source testimony.

Plaintiff's second point, that the ALJ failed to make a determination of credibility for Plaintiff's mother's testimony, is equally invalid. The Commissioner argues that the ALJ need not evaluate the credibility of third party witnesses, only the claimant. (Dkt. No. 18 at 11.) This argument is not necessary. The ALJ *did* evaluate the credibility of Plaintiff's mother. In his decision, he writes, "The claimant's mother reports that her daughter has difficulty remembering

things and finishing tasks," but that "the statements concerning the intensity, persistence, and limiting effects of [Plaintiff's symptoms] are not fully credible to the extent that they are inconsistent with the evidence of record." (T. at 26.) Although not explicit, the second statement clearly encompasses statements made by Plaintiff's mother as well as those by Plaintiff herself. Therefore, the ALJ made a ruling that Plaintiff's mother's testimony was not credible where it was inconsistent with the evidence of record.

For the purposes of credibility assessment, the ALJ followed the proper legal standard by first determining that Plaintiff's alleged symptoms could be caused by her underlying medically determinable mental impairment, and then making findings of credibility on the statements of the intensity, persistence, and limiting effects of those symptoms. (T. at 26.) The legal standard does not require *that he find such statements credible*, only that he make a finding of credibility. He has done so. Insofar as "the report of a consultative examiner may constitute substantial evidence to support an ALJ's decision" (*Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 2983)), the credibility findings are supported by the substantial evidence of Dr. Noia's consultative examination.

## B. Dr. Caldwell's Medical Opinion

Plaintiff objects to the ALJ's decision to accord the opinion of Dr. Caldwell less weight because it is inconsistent with other evidence in the record. (Dkt. No. 11 at 8.)

The medical opinions of a treating physician are given "controlling weight" as long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with other substantial evidence contained in the record. 20 C.F.R. § 404.1527(d)(2) (2012). However, the regulations differentiate between a "treating relationship"

and an "examining relationship." 20 C.F.R. § 404.1527(c)(1)-(2).  In fact, an ALJ should not rely heavily on the findings of consultative physicians after a single examination.  *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013).

However, there is no treating source in this case.  Plaintiff has not been tested for her mental impairments since graduating high school.  (T. at 324.)  Therefore, the ALJ was left with only two contradicting consultative examiners and the State agency medical consultant**.**

State agency medical consultants are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(f)(2)(I), 416.927(f)(2)(I).  Unlike the opinions of treating physicians, opinions of State agency medical consultants are not presumptively entitled to any particular weight.  *See* 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(I) ("Administrative law judges are not bound by any findings made by State agency medical or psychological consultants[.]").  However, such opinions must be evaluated according to the criteria governing all medical opinions.  *See* 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii).  Moreover, "unless [a] treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant[.]" *Id*.

"An ALJ is entitled to rely upon the opinion of a State agency medical consultant, since such a consultant is deemed to be a qualified expert in the field of social security disability . . . Such reliance is particularly appropriate where, as here, the opinion of the State agency physician is supported by the weight of the record evidence, including the medical findings of Plaintiff's examining and treating physicians." *Hildebrandt v. Barnhart*, No. 06-CV-0166, 2008 U.S. Dist. LEXIS 17973, at *27, 2008 WL 657258, at *9 (N.D.N.Y. March 7, 2008).  *See also Leach ex.*

*Rel. Murray v. Barnhart*, No. 02 Civ. 3561, 2004 U.S. Dist. LEXIS 668, at *26, 2004 WL 99935,

at *9 (S.D.N.Y. Jan. 22, 2004) ("State agency physicians are qualified as experts in the evaluation

of medical issues in disability claims. As such, their opinions may constitute substantial evidence

if they are consistent with the record as a whole.").

In evaluating a medical opinion, an ALJ must consider: (1) whether it is a treating or

examining relationship; (2) whether it is supported by the evidence cited; (3) whether it is

consistent with the record as a whole; (4) whether the opinion was offered by a specialist; and (5)

other factors brought to his attention. 20 C.F.R. § 404.1527(c). As to the third factor, the

opinions of Dr. Noia and Dr. Nobel are consistent with one another and the rest of the record,

with the exception of Dr. Caldwell's opinion, which is inconsistent. On the other four factors, the

three medical opinions are roughly equal: none are treating physicians, and both Noia and

Caldwell are examining physicians; they all support their own opinions with their own

observations; all three specialize in psychology; and no other factors have been brought to the

ALJ's attention.

As to consistency with the record, testimony shows that Plaintiff was capable of

performing her duties at her previous customer service position independently for three years

before she was dismissed. (T. at 337-41.) Nowhere in the record has Plaintiff shown any reason

that she would be less able to perform those duties today. In fact, she testified that she could have

continued at that job if not for unrelated medical issues that caused her to miss work. (T. at 341.)

Therefore, it is fully within the ALJ's discretion to assign less weight to Dr. Caldwell's opinion

insofar as it is inconsistent with the record, which shows both contradictory testimony and two

contradictory medical opinions. "It is up to the agency, and not this court, to weigh the

14

conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).

The legal standard indicates that the ALJ is required to explain the weight he has chosen to give to each medical opinion. 20 C.F.R. § 416.927(e)(2)(ii). He has done so. (T. at 26-28.) As above, Dr. Noia's consultative examination may serve as substantial evidence. *Mongeur,* 722 F.2d at 1039. It is not sufficient to argue that Dr. Caldwell's opinion is *also* substantial evidence, because "[i]f the court finds that there is substantial evidence to support the Commissioner's determination, the decision must be upheld, even if there is substantial evidence for the plaintiff's position." *Losquadro v. Astrue*, No. 11-CV-1798 (JFB), 2012 U.S. Dist. LEXIS 135703, at *16, 2012 WL 4342069, at *6 (E.D.N.Y. Sept. 21, 2012) (citing *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)).

### C.      Concentration, Persistence, and Pace

The RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (citation omitted). An RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work related abilities on a function-by-function basis. 20 C.F.R. §§ 404.1545, 416.945 (2012). Each finding must be considered separately and the ALJ must specify the functions Plaintiff is capable of performing; conclusory statements regarding Plaintiff's capacities are not sufficient. *Roat*, 717 F. Supp. 2d at 267 (citation omitted); SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996)[4]. Each assessment must include a narrative discussion describing how the evidence supports each conclusion, citing

---

[4]      There is no Lexis citation for this source.

specific medical facts and non-medical evidence.  SSR 96-8p.

Here, Plaintiff argues that the ALJ failed to account for his own finding that Plaintiff suffers from "moderate limitations in concentration, persistence, or pace" when determining her RFC.  (Dkt. No. 11 at 10.)  Plaintiff appears to be suggesting that this specific language should appear in the ALJ's RFC analysis.

During Step Three, the ALJ must consider whether a claimant's mental impairment is sufficiently severe to meet the requirements of listing 12.05.  20 C.F.R. § 404.1501 et seq. pt. 404P, app. 1 (2012).  If a claimant's disability meets listing 12.05, then the claimant is disabled. If not, then the process proceeds to step four.  Because Plaintiff has an IQ between sixty and seventy, the requirements to find disability are at least two of the following:

(1) marked restriction of activities of daily living; or

(2) marked difficulties in maintaining social functioning; or

(3) marked difficulties in maintaining concentration, persistence, or pace; or

(4) repeated episodes of decompensation, each of extended duration.

*Id*.  In the ALJ's analysis, he determined that Plaintiff's impairment in (3) was only "moderate," one step lower than the required level of "marked."  (T. at 25.)  The other three were all "mild" or nonxistent.  *Id*.

These determinations are strictly for the purposes of a step two and step three analysis of the severity of the impairment, and as the ALJ notes in his decision, "the mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in . . . the Listing of Impairments."  (T. at 25.)  There is no requirement that an ALJ use the same language

16

from step two or three in the RFC analysis, so the absence of the words "concentration, persistence, or pace" in the ALJ's RFC assessment is not *per se* error. On the contrary, such a statement would be merely a conclusory statement about Plaintiff's abilities, and would thus be insufficient. *Roat,* 717 F. Supp. 2d at 267.

However, an ALJ is required to consider all symptoms and the extent to which said symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529, 416.929. If it can be shown that the itemized evidence which led to the finding of a moderate limitation on "concentration, persistence, or pace" was ignored during the RFC assessment, then this would be error. This is not the case. Specifically, the ALJ made his determination based on the psychological analysis performed by Dr. Nobel, the State agency medical consultant, who also found "moderate difficulties in maintaining concentration, persistence or pace." (T. at 26.) Nevertheless, Dr. Nobel believed in spite of this determination that Plaintiff was capable of simple work. (T. at 193.) Therefore, the same evidence that supports the ALJ's finding of a moderate limitation on concentration, persistence or pace also supports a finding of not disabled. The ALJ did consider these factors, and Plaintiff's argument is without merit.

### D.      Past Relevant Work

To satisfy the statutory definition of disability, the claimant must be not only unable to do their previous work but also unable to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B). At step four of the five step process the ALJ asks whether the claimant can perform former relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2014). A disability claimant bears the burden of proving that she cannot return to her

past relevant work, either as it is performed in the national economy, or as she actually performed it. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995) (denying a claim where the plaintiff retained the ability to perform her former job as a seamstress). "[E]ven if the claimant cannot work the equivalent of 8 hours a day, for 5 days a week, '[p]art-time work that was substantial gainful activity, performed within the past 15 years, and lasted long enough for the person to learn to do it constitutes past relevant work, and an individual who retains the RFC to perform such work must be found not disabled.'" *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (citing SSR 96-8p at *8).

Past relevant work, especially part-time work, is not relevant unless it was substantial gainful activity. *Id*. at 53-54. "[P]roper assessment of whether past work was substantial gainful activity requires evaluation of, inter alia, how well the claimant performed her duties, whether those duties were minimal and made little or no demand on her, what her work was worth to the employer, and whether her income was tied to her productivity. *Id*. at 54.

Here, Plaintiff argues that the ALJ's errors in determining credibility and RFC make his determination that Plaintiff can still perform her past relevant work unsupported by substantial evidence. (Dkt. No. 11 at 12.) As discussed above, the ALJ committed no error with regard to credibility. The only remaining possible source of error is Plaintiff's earlier claim that the ALJ did not assess Plaintiff's capability to work on a "regular and continuing basis," that is, "eight hours a day, five days a week, or equivalent." *Id*. at 11.

First, the SSR that Plaintiff cites, which explains that RFC should be assessed with regard to working "eight hours a day, five days a week, or equivalent," also goes on to say that a part time job that falls short of this schedule may still be considered past relevant work if it was

substantial gainful activity and the claimant worked there long enough to learn how to do the job. SSR 96-8p at *8. The mere fact that the ALJ did not reference a "regular and continuing basis" is not necessarily fatal. Furthermore, the ALJ's analysis was concerned specifically with Plaintiff's job at the hospital call center, which she testified *was* a full time job and which she remained at long enough to be able to work independently. (T. at 338-39.) Therefore, the ALJ *was* considering Plaintiff's RFC with regard to a job which had a full time schedule, and he determined her RFC was sufficient for her to perform the job as she actually performed it. (T. at 28.) He also determined that for the final three years of her time in that position, it was "substantial gainful activity" because she worked independently, full time, and her limitations did not impair her. *Id*.

Plaintiff then argues that the testimony of a vocational expert is required because Plaintiff has alleged non-exertional impairments which limit her range of work beyond her exertional impairments (here, there are no exertional impairments). (Dkt. No. 11 at 12.) Plaintiff is incorrect. A vocational expert or other vocational evidence is only required at step five of the five step analysis once the Plaintiff has met her burden through step four. *Butts v. Barnhart*, 388 F.3d 377, 383-84 (2d Cir. 2004) (quoting *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999)). Plaintiff was found not disabled at step four, and thus vocational expert testimony was never needed.

The Commissioner argues repeatedly that Plaintiff has not met her burden. (Dkt. No. 18 at 1-2, 5, 9, 12.) This is correct. Plaintiff bears the burden of proving that she can no longer perform her past relevant work at the hospital call center as she actually performed it. 20 C.F.R. §§ 404.1520(f), 416.920(f). Plaintiff worked independently for three years at that job, and the record is devoid of any indication that her mental limitations have in any way worsened since she

was dismissed.  The job still exists under a different name.  (T. at 338.)  There is no medical

evidence of any accident or deterioration that might indicate a worsening of her mental state, and

nowhere in the record has Plaintiff described any change in her capabilities since 2002, when she

was fired.  The only accident which occurred since then was Plaintiff's ankle injury in 2003, the

same year as the alleged onset date in her application, and the ALJ ruled out Plaintiff's claims

with regard to that injury as unsupported by medical evidence.  (T. at 27.)  In fact, both the

Plaintiff and her mother testified that her employers were happy with her work and that she could

have continued at that job if not for missed time due to surgery.  (T. at 341, 370.)  Plaintiff has

failed to meet her burden.

The ALJ utilized proper legal standards at all stages of his analysis, and the finding of not

disabled is supported by substantial evidence.  For the reasons outlined above, I recommend that

the final decision of the Commissioner be affirmed.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the decision of the Commissioner be affirmed.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72.


Dated: July 15, 2014
      Syracuse, New York

                                          Thérèse Wiley Dancks
                                          United States Magistrate Judge